UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10175-GAO

CEA BROMFIELD LLC,
Plaintiff,

v.

MAXI DRUG, INC. and AMERICAN DRUG STORES LLC,
Defendants.

OPINION AND ORDER
January 29, 2010

O'TOOLE, D.J.

I.      Background

The plaintiff, CEA Bromfield LLC ("CEA") has brought suit against defendants Maxi

Drug, Inc. ("Maxi Drug") and American Drug Stores LLC ("American Drug"), alleging claims

of breach of contract against each defendant for failure to pay rent and other obligations under a

lease (the "Master Lease" or "Lease"). CEA is the owner of commercial real estate located at

1111 South Willow Street in Manchester, New Hampshire. Through a series of assignments,

NEA Delaware, Inc. d/b/a Tweeter, etc. ("Tweeter") was the tenant on the property until it filed a

petition for relief under Chapter 11 in bankruptcy court in November, 2008. The parties dispute

whether American Drug and Maxi Drug, as successive assignees of the original tenant's rights,

remain liable under the Master Lease.

The complaint was filed in February, 2009. On April 23, 2009, CEA moved for summary

judgment. On April 27, 2009, a scheduling conference was held, and both briefing and discovery

schedules were set. On June 4, 2009, the defendants filed a cross-motion for summary judgment

and an opposition to CEA's motion. They also moved to continue or deny CEA's motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, contending that discovery is needed for them to oppose the motion. Additionally, the defendants have moved to strike CEA's Local Rule 56.1 Statement of Facts and an affidavit submitted in support of its summary judgment motion.

## II.    **Contractual History**

To understand and address the issues raised by the motions, it is necessary to set forth the series of transactions that created and altered the status of the various parties.

1. *The Initial Lease*: On September 8, 1994, Star Markets Company, Inc. ("Star") and American Drug Stores, Inc. ("ADSI") executed the Master Lease, pursuant to which Star, as landlord, leased the property to ADSI, as tenant, for an initial term of ten years. The Master Lease provided the tenant with the option serially to extend the lease six times for terms of five years each.

Under Section 22.1 of the Master Lease, the tenant had "the right, without Landlord's consent, to assign this Lease or sublet the whole or any part of the Premises to any party who will engage in permitted uses under Section 3.1." (Aff. of Steven A. Cohen Ex. A at 30 [hereinafter Cohen Aff.].) Critical to the present issues, Section 22.2, titled "No Release of Tenant" provided: "In no event whatsoever, shall Tenant be relieved of any of its obligations to be performed by Tenant under this Lease, whether occurring before or after an assignment or subletting by Tenant." (Id. at 31.) In other words, the tenant was free to assign or sublet, but it remained responsible for all tenant obligations under the lease.

The Master Lease contained other pertinent terms. Under Section 4.3, any extension option could be exercised "only by Tenant giving Landlord written notice of its election to do so

2

at least six (6) months prior to the expiration of the Original Term or of the particular Extended Term, as the case may be." (Id. at 6.) Article 29 of the Master Lease set forth the required method of notice. (Id. at 38.) Section 34.5 provided that the Master Lease "may not be amended or modified by any act or conduct of the parties or by oral agreement, but only by a written agreement signed by Landlord and Tenant." (Id. at 41.)

2. *First Change of Landlord*: On March 15, 1996, Star conveyed the property to Rosenstar Manchester, LLC ("Rosenstar"). (Cohen Aff. Ex. B.) Rosenstar thus became the "Landlord" under the Master Lease.

3. *Sublease to Tweeter*: On June 16, 1998, ADSI and Tweeter executed an agreement (the "Sublease") under which ADSI sublet the property to Tweeter. (Aff. of James J. Comitale in Supp. of Cross Mot. for Summ. J. of Maxi Drug, Inc. and Am. Drug Stores LLC and in Opp'n to the Mot. for Summ. J. of CEA Bromfield LLC Ex. B [hereinafter Comitale Aff.].) Under the agreement, Tweeter could extend the term of the Sublease if ADSI exercised its option to extend the term of its tenancy under the Master Lease. If ADSI elected not to extend its term under the Master Lease, the Sublease gave Tweeter the right to require ADSI to assign its tenancy interest under the Master Lease to Tweeter. (This later occurred.)

4. *First Assignment Between Tenants*: On January 16, 2002, ADSI assigned its tenancy interest under the Master Lease to Maxi Drug, and Maxi Drug expressly assumed the obligations of the tenant under the Master Lease. (Cohen Aff. Ex. D.) The First Assignment also expressly provided that Maxi Drug "shall not be released from any of its obligations under the [Master] Lease . . . by the subsequent assignment of the [Master] Lease or the subsequent subletting of all or any portion of the premises." (Id. at 2.)

5. *Second Assignment of Tenancy*: On September 15, 2003, Maxi Drug notified Tweeter that it would not be exercising its first option to extend the Lease. This triggered Tweeter's right to compel Maxi Drug to assign its tenancy interest under the Lease to Tweeter, and on March 23, 2004, Rosenstar, Maxi Drug and Tweeter all entered into an agreement (the "Second Assignment") under which the tenant's interest under the Master Lease was assigned to Tweeter. (Comitale Aff. Ex. E.)  Thus, Tweeter was no longer a sublessee but rather the tenant. The assignment recited that as of October 1, 2004 (the "Effective Date"), Maxi Drug was assigning its interest under the Master Lease to Tweeter and Tweeter was assuming all of Maxi Drug's obligations under the Master Lease thereafter, (id. ¶¶ 1–2), and further provided that "Landlord [Rosenstar] hereby acknowledges the assignment of the tenant's interest in and to the Lease from Assignor [Maxi Drug] to Assignee [Tweeter] upon the condition that, pursuant to Section 22.2 of the [Master] Lease, Assignor shall not be relieved or released of its obligations under the [Master] Lease as a result thereof, and Assignor agrees that from and after the Effective Date, Assignor shall remain liable under the [Master] Lease jointly and severally with Assignee." (Id. ¶ 4.) The Second Assignment also provided that Maxi Drug and Tweeter "hereby exercise the first two (2) options to extend the term of the Lease," thereby extending the term until September 30, 2014. (Id. at ¶ 7(B).) The Second Assignment also provided that it could be amended by Tweeter and Rosenstar, without Maxi Drug's approval, but that Maxi Drug "shall not be bound by any such amendment made without its approval." (Id. at ¶ 15.)

6. *Amendment and Extension of Master Lease*: On August 4, 2004, Rosenstar and Tweeter entered into an agreement (the "Third Amendment") which reduced the base rent and rental area under the Master Lease and extended its term an additional five years through September 30, 2019. Maxi Drug was not a party to this agreement.

7. *Other Events*: In April, 2006, Rosenstar assigned its rights as Landlord under the Master Lease to CEA, the present plaintiff. (Cohen Aff. Ex. C.) In June, 2006, ADSI underwent a series of corporate conversions, with the consequence that American Drug is now the institutional successor of ADSI. In November, 2008, Tweeter filed for bankruptcy protection, resulting in a default under Section 24.1 of the Master Lease. (See Cohen Aff. Ex. A at 34.) As a result of Tweeter's bankruptcy, CEA is looking to American Drug, as the first tenant and first assignor, and Maxi Drug, as an assignee/assignor tenant, for fulfillment of the tenant's financial obligations under the Master Lease.

## III.   Discussion

There is no factual dispute about the history or relevant provisions of the several agreements pertaining to the leased property. The parties do dispute whether and to what extent Maxi Drug and American Drug are liable for the tenant's obligations under the Master Lease in the wake of Tweeter's default. CEA argues that American Drug is liable under Section 22.2 of the Master Lease, which provided that the original tenant (American Drug's corporate predecessor) would remain liable for the tenant's obligations under the lease after any assignment or subletting. Maxi Drug, the plaintiff argues, is liable because it stepped into the shoes of the original tenant as the assignee of ADSI and thus became bound by Section 22.2, a consequence later reiterated and acknowledged by Maxi Drug in the Second Assignment.

The defendants raise several issues with the plaintiff's claims, focused on the Second Assignment and the Third Amendment. First, they argue that Maxi Drug had no interest to assign to Tweeter on October 1, 2004, the effective date of the assignment under the Second Assignment, because its interest under the Master Lease terminated on September 30, 2004. Second, they argue that the three purported exercises of extension options were ineffective

because they failed to comply with the Master Lease's notice requirement. Third, they argue that the Second Assignment is not enforceable because it was not supported by consideration. And fourth, the defendants argue that the Third Amendment does not bind Maxi Drug or American Drug, as neither was a party to it.

A.    Was Maxi Drug's Assignment to Tweeter Effective as of October 1, 2004?

By affidavit, James Comitale, Maxi Drug's vice president and secretary, states that, having reviewed the records, he has "found no evidence of [Maxi Drug] or [ADSI] or [American Drug] having exercised the first option to extend the Master Lease beyond the Original Term of the Master Lease, which ended on September 30, 2004." (Comitale Aff. ¶ 4.) He states that he has "found evidence of just the opposite," as Maxi Drug "was well aware that it was concluding its leasing obligations on the Manchester Property by September 30, 2004, the end of the Original Term of the Master Lease," and that Maxi Drug "had no interest in extending the Master Lease beyond the Original Term since it was not operating a drug store on the Manchester Property." (Id. ¶ 5.)

Similarly, the affidavit of Peter Schmitz (who, from October 1995 to August 2007 was employed by Brooks Pharmacy, a subsidiary of Maxi Drug, as Director of Real Estate, and later as Vice President of Real Estate) explains that Brooks was not interested in extending the Lease beyond its original term, that he had notified Tweeter in September 2003 that Maxi Drug would not be exercising the first option to extend the Lease, and that "I believe that neither I nor any other Brooks or [Maxi Drug] representative exercised the first option to extend the Master Lease beyond the expiration date of its first term . . . ." (Aff. of Peter Schmitz in Supp. of Cross Mot. for Summ. J. of Maxi Drug, Inc. and Am. Drug Stores LLC and in Opp'n to the Mot. for Summ. J. of CEA Bromfield LLC ¶¶ 7, 9–10 [hereinafter Schmitz Aff.].)

These statements are made in support of the defendants' curious argument that Maxi Drug's interest under the Master Lease had terminated on September 30, 2004, the end of the original term of the Lease, and that on October 1, the "Effective Date" of the assignment, Maxi Drug had no interest to assign. It appears to be a Cinderella argument: Maxi Drug's tenancy interest expired as the clock struck midnight on September 30, 2004, and by the time the second hand ticked once to the right of twelve and the day became October 1, the "Effective Date," what was purportedly to be assigned had vanished and there was nothing that could be made "effective."

The argument is not only too cute, but it is also untenable in light of the documentary record. The Schmitz Affidavit ignores the plain language of the Second Assignment, signed by Schmitz himself on behalf of Maxi Drug, which recited that *both* Maxi Drug and Tweeter were exercising the first two options to extend the lease. (Cohen Aff. Ex. E ¶ 7(B) ("Assignor [Maxi Drug] and Assignee [Tweeter] hereby exercise the first two (2) options to extend the term of the Lease.").) The Second Assignment was executed on March 23, 2004, when Maxi Drug clearly had an assignable interest. By that instrument, Maxi Drug agreed that the term of the Master Lease would be extended by ten years and that as of October 1, 2004, its rights and liabilities under the Lease would be assigned to, and assumed by, Tweeter. The defendants' argument depends on giving the "Effective Date" clause a magical meaning that would be at odds with the purpose, context, and explicit language of the Second Assignment. Whatever strained meaning the words of the clause might conceivably bear, it is abundantly clear that what the parties intended was that, consistent with the terms of the Sublease between Maxi Drug and Tweeter, Tweeter would exercise the option to extend the Lease that was nominally Maxi Drug's but devolved to Tweeter under the terms of the Sublease.

B.      Was the Exercise of the Options Assignment Ineffective Because of
        the Master Lease's Notice Requirement?

Section 4.3 of the Master Lease provides that "[e]ach option for an Extended Term may be exercised only by Tenant giving Landlord written notice of its elections to do so at least six (6) months prior to the expiration of the Original Term or of the particular Extended Term, as the case may be." (Cohen Aff. Ex. A at 6.) Section 29.1 further provides that:

> All notices, requests, demands and other communications made under this Lease shall be in writing and, except as otherwise specifically provided in this Lease, shall be deemed duly given only if sent by registered or certified mail, return receipt requested, postage prepaid, or sent by a nationally recognized overnight delivery service which maintains delivery records . . . .

(Id. at 38.)

The defendants argue that Maxi Drug never provided any notice pursuant to Section 29.1 of the Master Lease, and therefore the first two options were never effectively exercised and, as a result, the lease term and all obligations of the defendants under the Lease expired at midnight on September 30, 2004.

The notice provision obviously runs to the benefit of the intended recipient of the notice, here the landlord, not the mandated giver of the notice, here Maxi Drug. Maxi Drug seeks to use its own non-compliance with the notice requirement (according to its own characterization) to wiggle out of a deal it plainly agreed to. In the Second Assignment, the parties' intention could not have been clearer: "Assignor [Maxi Drug] and Assignee [Tweeter] hereby exercise the first two (2) options to extend the term of the Lease." (Cohen Aff. Ex. E ¶ 4.) The execution of the Second Assignment more than six months prior to the end of the original lease term, with Rosenstar as a party to the agreement, obviated any need for written notice of the intention to exercise the option. It is clear that in the Second Assignment, Maxi Drug agreed with both Rosenstar and Tweeter that the lease term would be extended by two periods of five years, until

September 30, 2014, with Tweeter as the assignee-tenant, and with Maxi Drug as the still responsible former tenant-assignor.[1]

C.       Was the Second Assignment Supported by Consideration?

The defendants argue that the indemnity obligation of the Second Assignment[2] cannot be enforced against them because Maxi Drug received no consideration in the Second Assignment for the indemnity promise. They point out that under New Hampshire law (which the Second Assignment chooses as governing), a promise based only upon past consideration is ordinarily unenforceable. This is certainly true as a general principle of contract law, but it is not determinative here.

The indemnity promise made in the Second Assignment was explicitly redundant of the indemnity promise contained in Section 22.2 of the Master Lease.[3] When Maxi Drug stepped into the shoes of ADSI under the Lease, it became bound by the Master Lease's indemnity promise, which was simply reiterated in the Second Assignment. There was no "new" promise that needed to be supported by "new" consideration. In any event, consideration to support Maxi Drug's indemnity promise is found both in the Second Assignment (for example, Rosenstar agreed to extend the lease term, and Tweeter agreed to assume Maxi Drug's liabilities), and in

---

[1]       The defendants also argue that the Third Amendment is ineffective because the landlord did not give notice to either Maxi Drug or American Drug. The short answer is that the notice provision of the Master Lease concerned notice between landlord and tenant only. Neither Maxi Drug nor American Drug was the tenant at the time, and there was no requirement of notice, however nice it might have been for the parties to the Third Amendment to have given such notice.

[2] "[P]ursuant to Section 22.2 of the [Master] Lease, Assignor [Maxi Drug] shall not be relieved or released of its obligations under the Lease as a result thereof, and Assignor [Maxi Drug] agrees that from and after the Effective Date [October 1, 2004], Assignor [Maxi Drug] shall remain liable under the Lease jointly and severally with Assignee [Tweeter]." (See Cohen Aff. Ex. E ¶ 4.)

[3] Transactional lawyers can be a nervous lot, and they often find security in redundancy.

the Master Lease, see Pope v. Lee, 879 A.2d 735, 745 (N.H. 2005) (option to renew was supported by consideration for the lease containing the option).

    D.       Is Either Defendant Bound by the Third Amendment?

Maxi Drug and American Drug both argue that because neither was a party to the Third Amendment, nor had notice of it, neither is bound by it. Accordingly, they disclaim liability for the third extension of the lease term, from September 30, 2014 to September 30, 2019.

Their first argument is that the Master Lease could only be amended by the original tenant under the Master Lease. Section 34.5 of that Lease provides that it "may not be amended or modified by any act or conduct of the parties or by oral agreement, but only by a written agreement signed by Landlord and Tenant," (Cohen Aff. Ex. A § 34.5), and in its opening recitals, the Lease designated "American Drug Stores, Inc." as the "Tenant." (Id. at 1.) Thus, according to the defendants, only ADSI could agree to an amendment to the Lease because only ADSI was the "Tenant." (By the same logic, presumably only "Star Markets Company, Inc.," the original Landlord, could agree to an amendment.) Because ADSI did not sign the Third Amendment, the defendants reason, there was no amendment to the Master Lease.

Once again, the defendants advance a hyper-literal, but nonsensical, reading of the document. If it were true that the term "Tenant" referred exclusively to the initially named tenant, then no assignee could ever acquire the status of "Tenant" under the Lease and none of the rights or obligations of the Tenant would devolve upon the assignee. Such a reading would necessarily frustrate any purported assignment, but the Master Lease clearly authorized assignment, and clearly contemplated that an assignee would have the benefits and burdens of tenancy. Rather, the sensible understanding is to regard the terms "Landlord" and "Tenant" as referring to the entities standing in those respective positions at the relevant times. The Third

Amendment was properly executed by the then-Landlord and the then-Tenant, both assignees from the initial parties.

The more substantial question is whether the Third Amendment, validly entered into by Rosenstar and Tweeter, improperly purported to add obligations to the defendants as former tenants/assignors that they had not agreed to undertake under prior documents. The defendants argue that the Third Amendment did so by extending the lease term another five years, to September 30, 2019. In particular, Maxi Drug points to Section 15 of the Second Assignment that provides:

> This Agreement shall have the effect of an agreement under seal and may be amended only by an instrument executed by all parties hereto; provided, however, that after the Effective Date [October 1, 2004] the [Master] Lease may be amended by agreement of the Assignee [Tweeter], its successors and assigns and the Landlord [Rosenstar] and its successors and assigns without the necessity of approval by the Assignor [Maxi Drug], but the Assignor [Maxi Drug] shall not be bound by any such amendment made without its approval.

(Cohen Aff. Ex. E ¶ 15.) Maxi Drug argues that because it did not approve the Third Amendment, it is not bound by the extension of the lease term, and therefore is not liable for Tweeter's unpaid obligations during the five year period from October 1, 2014, to September 30, 2019.

ADSI, American Drug's corporate predecessor, and Maxi Drug each respectively took advantage of the provision of the Master Lease permitting assignment. Under the Lease, each remained liable for the tenant's obligations in the event of default by an assignee. Because of the serial options, it was possible and foreseeable that there could be tenant's obligations for as long as thirty years after the expiration of the original term of the Lease. An assignor's potential obligation in the event of an assignee's default is not limited by the Lease to the original term. On the contrary, Article 4 of the Lease treats the optional extensions, if exercised, as part of the Lease "Term." It provides: "This Lease shall consist of the Original Term and the Extended

Terms, if exercised, all as set forth below." (Cohen Aff. Ex. A at § 4.1.) By agreeing in the Lease to be potentially responsible in the event of a future default by an assignee, the defendants were agreeing to be on the hook not only for the original term, but also for any extended term.

The Third Amendment's extension of the lease termination date from September 30, 2014, to September 30, 2019, was effectively an exercise by Tweeter of the third extension option. (The first two options had been exercised by the Second Assignment.) The Third Amendment apparently recognized this fact by referring to the original provision in the Master Lease that granted six successive five-year options and noting that Tweeter would have three "remaining" options. (Cohen Aff. Ex. F at ¶ 3.) It does not matter that the exercise of the third option was in a document called an "amendment." The provision in the Second Assignment that exercised the first two options was also within a section encaptioned, "Lease Amendments." (Cohen Aff. Ex. E at ¶ 7(B).) It is the substance, not the label, that matters, and the substance of the Third Amendment included an exercise by Tweeter of the third five-year extension option, as provided in the Master Lease.

For this reason, insofar as the Third Amendment included the exercise of the extension option, there was no new obligation imposed on the defendants. They had already agreed, albeit contingently, to responsibility for the assignee-tenant's defaults during that, and any other, extension of the lease term.[4]

In sum, according to the agreements submitted by the parties, both defendants are liable for the Tenant's obligations under the Master Lease for the entire period at issue.

---

[4] The Third Amendment made other changes to the benefit of the defendants. Because the rentable space was reduced, so was the rent for which the defendants could be potentially liable. (Cohen Aff. Ex. F ¶ 2.)

**IV.**      **Defendants' Rule 56(f) Motion**

In addition to opposing the plaintiff's motion for summary judgment on its merits, the defendants have moved pursuant to Rule 56(f) of the Federal Rules of Civil Procedure for the Court to deny or stay consideration of the plaintiff's motion. The defendants claim that they need to obtain discovery in order to present facts essential to oppose the plaintiff's contentions. The defendants suggest that they need the discovery to help properly construe the relevant agreements and to assess CEA's efforts to mitigate damages.

The issue of damages is not raised in the plaintiff's motion for summary judgment, and it is properly viewed as a motion for summary judgment as to liability only. Discovery as to damages is not now relevant to the issues presented. As to discovery related to interpretation of the agreements, the defendants do not explain why discovery would be appropriate or helpful. See Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 10 (1st Cir. 2007) ("[T]he prophylaxis of Rule 56(f) is not available merely for the asking. A litigant who seeks to invoke the rule must act with due diligence to show that his predicament fits within its confines. To that end, the litigant must submit to the trial court an affidavit or other authoritative document showing (i) good cause for his inability to have discovered or marshalled the necessary facts earlier in the proceedings; (ii) a plausible basis for believing that additional facts probably exist and can be retrieved within a reasonable time; and (iii) an explanation of how those facts, if collected, will suffice to defeat the pending summary judgment motion."). The agreements are detailed and integrated instruments, and parol evidence would ordinarily be inadmissible. In the absence of a more specific showing, the defendants' Rule 56(f) request is denied.

**V.**   **Defendants' Motion to Strike the Cohen Affidavit and the Plaintiff's 56.1 Statement**

The defendants move to strike the Cohen Affidavit, which they contend consists of legal arguments and conclusions, and, in turn, to strike the plaintiff's Local Rule 56.1 Statement of Facts, which relies entirely on the Cohen Affidavit. The defendants are correct that there is substantial legal characterization of the relevant documents in the Cohen Affidavit, but its only real purpose is to authenticate the documents, which it does. The Court has disregarded the legal characterizations contained in the affidavit. The motion to strike is therefore denied.

**VI.**   **Conclusion**

For the foregoing reasons, the Plaintiff CEA Bromfield, LLC's Motion for Summary Judgment (dkt. no. 20) is GRANTED, and the Cross Motion of Maxi Drug, Inc. and American Drug Stores LLC for Summary Judgment (dkt. no. 28) is DENIED. The Motion of Maxi Drug, Inc. and American Drug Stores LLC Pursuant to Rule 56(f) to Deny or, in the Alternative, Continue Bromfield's Motion for Summary Judgment (dkt. no. 34), and the Motion of Maxi Drug, Inc. and American Drug Stores LLC to Strike the Affidavit of Steven A. Cohen and Plaintiff's Statement of Undisputed Facts (dkt. no. 41) are DENIED.

It is SO ORDERED.


   /s/ George A. O'Toole, Jr.
United States District Judge